UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

MODERN PHARMACY, LLC, a Florida
limited liability company, PHARMAQUICK,
LLC, a Florida limited liability company, and
MICHAEL ROSENBAUM, an individual,

    Plaintiffs,

vs.

    Case No.:

J.M. SMITH CORPORATION a/k/a J M
Smith Company and also d/b/a SMITH DRUG
COMPANY, and SMITH DRUG
COMPANY, a foreign corporation,

    Defendants.
_____/

**VERIFIED COMPLAINT FOR DAMAGES**
**AND FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF**

Plaintiffs, Modern Pharmacy, LLC, Pharmaquick, LLC, and Michael Rosenbaum sue Defendants, J.M. Smith Corporation a/k/a J M Smith Company and also d/b/a Smith Drug Company, and Smith Drug Company, and allege:

**PARTIES, JURISDICTION AND VENUE**

1. This is an action for:

    a. damages in excess of $75,000.00, exclusive of interest, attorneys' fees and costs; and

    b. declaratory relief pursuant to Chapter 86, Florida Statutes and for additional, alternative, coercive, subsequent, incidental and supplemental relief, including but not limited to injunctive relief and an award of damages within the jurisdiction of this Court.

2. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as all parties are citizens of different states and the amount in controversy, exclusive of interest,

1

exceeds $75,000.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2), as a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District. The subject personal property at issue in this litigation is in Miami-Dade County, Florida and the causes of action accrued in Miami-Dade County.

4. Plaintiff, Modern Pharmacy, LLC, ("Modern") is a Florida limited liability company that owns and operates a retail pharmacy store located in Miami Beach, Miami-Dade County, Florida. For nearly 18 years, Modern (a United States Medicare and Florida Medicaid healthcare provider) has specialized in providing healthcare and counseling services and pharmaceuticals to HIV/AIDs and cancer patients whose maintenance of medicinal regiments are critically necessary.

5. Plaintiff, Pharmaquick, LLC, ("Pharmaquick") is a Florida limited liability company that owns and operates a retail pharmacy store known as Midtown Pharmacy which is located in Miami Beach, Miami-Dade County, Florida. For nearly 20 years, Pharmaquick (a United States Medicare and Florida Medicaid healthcare provider) has specialized in providing healthcare and counseling services and pharmaceuticals to HIV/AIDs and cancer patients whose maintenance of medicinal regiments are critically necessary. Hereinafter, Modern and Pharmaquick will be referred to collectively as the "Pharmacies".

6. Plaintiff, Michael Rosenbaum, ("Rosenbaum") is over the age of 18, otherwise sui juris and resides in Miami Beach, Miami-Dade County, Florida.

7. Defendant, J. M. Smith Corporation a/k/a J M Smith Company ("JM Smith") is a South Carolina corporation that is registered as a foreign profit corporation in the State of Florida and doing business in Miami-Dade County, Florida. Defendant Smith Drug Company is believed to be a foreign corporation that is a division of JM Smith and does business in Miami-Dade County,

Florida. Smith Drug Company is also a name under which JM Smith does business. JM Smith, JM Smith d/b/a Smith Drug Company and Smith Drug Company shall be referred to individually and collectively as "SDC". SDC identifies itself as a premier, full-line wholesale pharmacy distribution company serving independent community and long term care pharmacies in various territories including the State of Florida. SDC (directly, by and through Smith Management Services and Healthwise Pharmacy) is a direct competitor of the Pharmacies.

**FACTUAL ALLEGATIONS**

8. In 2017, Smith Drug initiated negotiations to replace the existing primary pharmaceutical wholesaler (the "Original Wholesalers") for the Pharmacies.[1] At such time, SDC knew (from the get-go) that any agreement entered amongst the parties must have two (2) provisions (the "Mandatory Provisions") which were non-negotiable to the Pharmacies, as follows: (i) SDC's Pricing (*i.e.*, W.A.C.) in all material respects must "meet or beat" the pricing (the "OW Pricing") of the Original Wholesalers; and (ii) a 90 business day transition period (the "Trial Period"), whereby SDC would prove its ability to deliver goods at the OW Pricing while the Pharmacies transitioned from the Original Wholesalers to SDC.[2]

9. During this process the respective parties exchanged diligence and negotiated and subscribed to certain terms (the "Original Terms"), which were memorialized in communications exchanged between the parties. Pursuant to these communications it was agreed that so long as Modern satisfied SDC's generic requirements after a 90 business day transition period, the terms included certain reduced pricing for all brand and generic pharmaceutical products, including (but, not limited to) no less than a (i) 6.00% discount ("Discount") off of the costs of goods (which in

---

[1] The Original Wholesalers included Cardinal Health, McKesson Corporation, and others.
[2] Any application of the 2018 Documents amongst the parties was limited to the Trial Period, as follows: (i) SDC / Modern Pharmacy-- "Estimated Monthly Volume: $100,000.00; Generic Percentage: 25%; Effective Cost of Goods: -6.%"; and (ii) SDC / Pharmaquick "Estimated Monthly Volume: $100,000.00; Generic Percentage: 20%; Effective Cost of Goods: -6.%."

3

this case was WAC)[3] on invoices for all pharmaceutical products, plus (ii) an additional 6.00% rebate credit ("Rebate") off of the costs of goods (which in this case was WAC) on statements for all for all pharmaceutical products (see May 22, 2017 letter to SDC to the attention of Marcus Singleton and Salvatore Graziano attached hereto as Exhibit "1").[4] Further, HIV drugs were to be excluded from the generic percentage formularies, which in turn was to turn was to yield additional discounts and rebates.

10. Between March 2017 and May 2017, in reliance on the Original Terms presented by SDC and the SPA (defined *infra.*), the Pharmacies began placing SDC as a primary wholesaler to replace and/or the Original Wholesalers.

11. On May 22, 2017, Modern (including, Pharmaquick) signed and returned to SDC the Smith Drug Purchase Agreement ("SPA").[5] See Exhibit "1". The SPA was to be effective for a period of 24 months from the effective date of March 14, 2017. In accordance with this letter, pending receipt of the countersigned SPA from SDC, it was intended that the already existing contractual relationship would continue in accordance with the written communications already subscribed amongst the parties.

12. In addition to the SPA, SDC claims (and, Plaintiffs deny) that certain documents were signed and delivered amongst, and govern the relationship between, the parties, as follows: (a) Application for Credit – SDC signed March 2, 2017 for the account of "Rosenbaum INT law

---

[3] https://www.fdbhealth.com/policies/drug-pricing-policy/ ("Wholesale Acquisition Cost (WAC) as published by FDB represents the manufacturer's published catalog or list price for a drug product to wholesalers (such as MCK) as reported to First Databank by the manufacturer. WAC does not represent actual transaction prices and does not include prompt pay or other discounts, rebates or reductions in price.

[4] In other words, all pharmaceuticals were priced at no less than 12.00% off of WAC, plus additional incentives.

[5] Pharmaquick was an intended third-party beneficiary with rights under the SPA. See Sec. 8 of SPA ("Smith Drug knows that Pharmaquick, LLC (Midtown Pharmacy) is a commonly owned independent affiliate of Customer for purposes of the aforementioned.").

4

ITF Modern Pharmacy", which expired on January 31, 2018; (b) Continuing and Personal Guaranty of Payment dated March 2, 2017 by "Rosenbaum INT law ITF Modern Pharmacy" to J M Smith Corporation (signed by Michael Rosenbaum) regarding payment of amounts due from the Purchaser identified as "Rosenbaum Int Law ITF Modern Pharmacy"; (c) Security Agreement dated March 2, 2017 between SDC and "Rosenbaum INT law ITF Modern Pharmacy ("Buyer")" and signed by "Buyer: Rosenbaum INT law ITF Modern Pharmacy"; and, (d) State of Florida Uniform Commercial Code Financing Statement from Modern Pharmacy, LLC and "Rosenbaum Int Law ITF Modern Pharmacy" to SDC. The documents identified in (a)-(d) above shall be collectively referred to as the "Modern Security Interests".

13. Further, in addition to the SPA, SDC alleges (and, Plaintiffs deny) that certain documents were signed and delivered amongst, and govern the relationship between, the parties, as follows: (a) Application for Credit – SDC signed March 31, 2017 for the account of "Pharma quick, LLC", which expires March 31, 2019; (b) Continuing and Personal Guaranty of Payment dated March 31, 2017 by "Michael Rosenbaum" to J M Smith Corporation (signed by Michael Rosenbaum) regarding payment of amounts due from the Purchaser identified as "Pharma quick LLC"; (c) Security Agreement dated March 31, 2017 between SDC and "Pharma Quick LLC ("Buyer")" and signed by "Buyer: Pharma quick LLC"; and, (d) State of Florida Uniform Commercial Code Financing Statement from Pharmaquick and Midtown Pharmacy to SDC. The documents identified in (a)-(d) above shall be collectively referred to as the "Pharmaquick Security Interests".

14. The SPA along with these instruments (and other associated UCC filings) were all intended to be part of the same transaction and linked to each other.

15. However, SDC has taken the position that no SPA has been agreed upon and the pricing and terms remain in contention. See the March 26, 2018 email from Tony Acevedo

attached hereto as Exhibit "2".[6]

16. SDC has invoiced the Pharmacies for the purchase of pharmaceuticals.

17. The pricing, amounts and terms reflected in the invoices have been and continue to be improperly calculated and are not in accordance with the SPA signed and returned by Modern in May 2017. If the SPA is not the operative document as SDC contends, then alternatively, the terms and pricing used by SDC are not in accordance with the Original Terms reflected in the written communications between the parties. SDC has failed to properly account for WAC and apply the Discount and Rebate. Furthermore, as best as the Pharmacies can determine, the pricing and terms used by SDC have no relationship to and are not in accordance with any version of the SPA prepared by SDC.

18. Additionally, the pricing used by SDC exceeds the pricing the Pharmacies were receiving from the suppliers being used before making the move to SDC as the primary wholesaler. SDC was fully aware of the pricing and terms the Pharmacies were receiving from their then existing suppliers and what pricing and terms were required from SDC for the Pharmacies to justify making the change to SDC and to remain profitable. The pricing that SDC is now attempting to impose creates an unprofitable situation for the Pharmacies, a fact that SDC is fully aware of.

19. Between the second quarter of 2017 and the second quarter of 2018, upon receipt of the invoices from SDC, the Pharmacies prepared and regularly submitted reconciliations of the

---

[6] On or about June 27, 2018, SDC countersigned and delivered (for the first time) the documents (collectively, the 2018 Documents") to the Plaintiffs, which SDC used to encumber the Modern Security Interests and the Pharmaquick Security Interests. In a written letter (dated June 27, 2018), SDC (by and through Tony Acevedo, its Credit Manager) attempted to authenticate the documents for the Modern Security Interests and Pharmaquick Security Interests to the Plaintiffs. Mr. Acevedo first entered the picture on March 26, 2018 after replacing SDC's former credit manager, Tony Thompson. However, the 2018 Documents delivered by SDC (via mail and wire) to the Plaintiffs contain a myriad of discrepancies, including (but, not limited to) unauthorized add-ons and type-overs inserted by SDC (by and through its authorized agents, Marcus Singleton, and others). For the 2018 Documents, SDC could not authenticate the Security Agreement. Further, Attachment A in the 2018 Documents is missing the entire agreement it is exhibited to.

invoices to SDC on a bi-weekly basis along with payments in accordance with the reconciled amounts. All of the reconciliations were calculated in the same fashion and prepared with the same formulary. For over a year, the reconciliations were accepted and never objected to or questioned by SDC who accepted (and did not return) each of the payments that were made in accordance with the reconciliations that were delivered to SDC. The accounts have been paid in full as per the payments made by the Pharmacies and accepted by SDC pursuant to these reconciled protests. Accordingly, no money is owed to SDC by the Pharmacies. A few examples of the reconciliations are attached as Exhibit "3".

20. Only after a year of accepting the reconciliations and payments made in accordance therewith did SDC take issue with the reconciliations submitted in May 2018 and in June 2018 and returned the payments associated only with the May 2018 reconciliations. However, these reconciliations were performed using the very same formulary and under the same terms and conditions as all the prior reconciliations, all were accepted by SDC along with the associated payments, and none were returned by SDC. The recent payments that have been improperly returned by SDC have not been processed because under these circumstances there is no legitimate basis to support SDC's position with respect to these recent reconciliations and its attempt to now go back and claim amounts are owed on reconciled invoices dating back to as early as May 2017 (for Pharmaquick) and March 2017 (for Modern).

21. In May 2018 SDC unilaterally closed down the accounts of the Pharmacies and discontinued shipments (notwithstanding the minimum two-year commitment in the SPA) causing the Pharmacies significant damage in excess of $600,000. SDC has embarked on a path to attempt to improperly unwind a year's worth of transactions and reconciliations by sending revised statements in May 2018.

22. On or about June 6, 2018, SDC (through its counsel) mailed a notice of default and

demand for payment ("Notice") to Modern, Pharmaquick and Rosenbaum. The Notice: (1) claimed Modern was in default of an Application for Credit dated March 2, 2017 and Security Agreement dated March 2, 2017 and demanded payment in the sum of $719,267.79 as of May 30, 2018 together with default interest, costs and attorneys' fees from Modern and also from Rosenbaum under a Continuing and Personal Guaranty of Payment dated March 2, 2017; and (2) claimed Pharmaquick was in default of an Application for Credit dated March 31, 2017 and a Security Agreement dated March 31, 2017 and demanded payment in the sum of $284,536.89 together with default interest, costs and attorneys' fees from Pharmaquick and also from Rosenbaum under a Continuing and Personal Guaranty of Payment dated March 31, 2017.

23.     On June 13, 2018, Modern, Pharmaquick and Rosenbaum each sent to SDC (via Federal Express and email) a statutory request for an accounting and statement pursuant to Florida Statutes Section 679.210 indicating that as of June 13, 2018, (i) there was $0.00 debt due for the Account by Modern and no collateral securing the alleged account, (ii) there was $0.00 debt due for the Account by Pharmaquick and no collateral securing the alleged account, and (iii) there was $0.00 debt due for the Account by Rosenbaum and no collateral securing the alleged account,

24.     Modern, Pharmaquick and Rosenbaum also responded to and disputed the Notice advising that the SDC accounts had been paid in full, the Security Agreements (and related UCC filings) and Guaranties were not effective, the SDC pricing was improperly calculated and the Pharmacies had been and continued to be damaged by SDC's actions.

25.     The parties have been engaged in discussions about their respective positions but most recently SDC has threatened litigation in the event payments are not made on the disputed amounts SDC claims. It is expected that any such litigation would also include attempts to enforce the Security Agreements (and related UCC filings) and guaranties, all of which are not effective.

26. The parties have a dispute as to what agreements and terms were applicable to the parties' relationship.

27. The Pharmacies have only been able to cover some of the damages incurred by purchasing goods at retail prices from other wholesalers in substitution of SDC and have been damaged, including the difference between the higher cover costs and the contract prices originally subscribed by SDC.

### COUNT I – Declaratory and Other Relief Pursuant to Florida Statutes Chapter 86 (No Money Owed)(Modern and Rosenbaum)

28. Modern and Rosenbaum readopt and reallege paragraphs 1 through 27 above.

29. As detailed below, Modern and Rosenbaum seek a declaratory judgment as authorized by Florida Statutes Section 86.011 as to what are the pricing, terms and conditions with respect to the pharmaceuticals purchased by Modern from SDC.

30. <u>SDC's position</u>: Smith Drugs claims to be owed in excess of $700,000.00 on the Modern Account.

31. <u>Modern and Rosenbaum's position</u>: It is Modern and Rosenbaum's position that it is unclear what is the source of and what are the pricing, terms and conditions SDC is relying on. Further, Modern and Rosenbaum dispute the amount claimed to be owed and assert that they do not owe any money to SDC on the Modern Account for the following reasons: (1) the reconciliations and payments made and delivered to SDC were accepted or acquiesced in without objection for over a year establish either: (i) an accord and satisfaction or discharge; or (ii) a course of performance reflecting the agreed upon pricing under which Modern continued to order products from SDC; and (2) the pricing used by SDC is inaccurate, is not in accordance with the SPA signed by Modern or the Original Terms, does not properly account for WAC and fails to

9

properly calculate the amounts due and apply the proper credits and rebates to which Modern was entitled.

32. Modern has been damaged by SDC's improperly seeking payment of amounts that are not owed and shutting down and discontinuing deliveries based on the wrongfully claimed amounts. These damages include damages resulting from the interference with Modern's ability to do business and increased costs of obtaining inventory.

33. Modern will be irreparably harmed by SDC's continued pursuit of amounts it is not owed.

34. Accordingly, based on the foregoing, there is a bona fide adverse interest between the parties and doubt concerning the following: (i) what pricing and terms apply; and (ii) the amount, if any, that is owed. The parties are entitled to have this doubt removed as there is a bona fide, actual, present, and practical need for the declarations sought herein. The declarations sought herein deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

35. The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiffs, Modern and Rosenbaum, request the entry of a judgment: (a) declaring what pricing and terms apply, that any amounts owed have been paid by Modern and that no monies are owed to SDC; (b) enjoining SDC, from further taking steps to collect on the amounts it claims to be owed including but not limited to any efforts to enforce its claimed security interests and guaranty; and (c) awarding such additional, or alternative, incidental and or supplemental relief as may be necessary, including but not limited to compensatory, special and consequential damages, interest, costs, injunctive and such further relief as is proper.

## COUNT II – Declaratory and Other Relief Pursuant to Florida Statutes Chapter 86
### (Security Interests and Guarantee Not Valid)(Modern and Rosenbaum)

36.  Modern and Rosenbaum readopt and reallege paragraphs 1 through 27 above.

37.  As detailed below, Modern and Rosenbaum seek a declaratory judgment as authorized by Florida Statutes Section 86.011 that the Modern Security Interests are not valid.

38.  SDC's position: SDC claims that any money it is owed on the Modern Account is secured by and is guaranteed by the Modern Security Interests;

39.  Modern and Rosenbaum's position: Modern and Rosenbaum dispute the validity of the Modern Security Interests and any other related UCC filings for the following reasons: (1) without an agreed upon and countersigned SPA, the security agreements (and associated UCC filings) and the guaranties are not effective and fail for a lack or failure of (i) consideration, and/or (ii) an agreement to secure or guarantee; and (2) the security agreements and guaranties are identify the "Buyer" and the "Purchaser" as: "Modern Pharmacy DBA Rosenbaum INT law ITF Modern Pharmacy" - however, there is no such entity, and Modern Pharmacy LLC does not do business as Rosenbaum INT law ITF Modern Pharmacy.

40.  Modern has been damaged by SDC's continued improper maintenance of the security interests. These damages include damages resulting from the interference with Modern's ability to do business and increased costs of obtaining inventory.

41.  Modern will be irreparably harmed by SDC's continued improper maintenance of these security interest that are not valid.

42.  Accordingly, based on the foregoing, there is a bona fide adverse interest between the parties and doubt concerning whether the security interests are valid and should be allowed to continue to be maintained. The parties are entitled to have this doubt removed as there is a bona fide, actual, present, and practical need for the declarations sought herein. The declarations sought

herein deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

43. The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiffs, Modern and Rosenbaum request the entry of a judgment: (a) declaring that the Modern Security Interests are not effective, valid and enforceable and ordering the cancellation of any such interests; (b) enjoining SDC from taking steps to enforce its claimed security interests and guaranty; and (c) awarding such additional, or alternative, incidental and/or supplemental relief as may be necessary, including but not limited to compensatory, special and consequential damages, interest, costs, injunctive and such further relief as is proper.

### COUNT III – Declaratory and Other Relief Pursuant to Florida Statutes Chapter 86
### (No Money Owed)(Pharmaquick and Rosenbaum)

44. Pharmaquick and Rosenbaum readopt and reallege paragraphs 1 through 27 above.

45. As detailed below, Pharmaquick and Rosenbaum seek a declaratory judgment as authorized by Florida Statutes Section 86.011 as to what are the pricing, terms and conditions with respect to the pharmaceuticals purchased by Pharmaquick from SDC.

46. SDC's position: Smith Drugs claims to be owed in excess of $200,000.00 on the Pharmaquick Account.

47. Pharmaquick and Rosenbaum's position: It is Pharmaquick and Rosenbaum's position that it is unclear what is the source of and what are the pricing, terms and conditions SDC is relying on. Further, Pharmaquick and Rosenbaum dispute the amount claimed to be owed and assert that they do not owe any money to SDC on the Pharmaquick Account for the following reasons: (1) the reconciliations and payments made and delivered to SDC were accepted or acquiesced in without objection for over a year establish either: (i) an accord and satisfaction or

discharge; or (ii) a course of performance reflecting the agreed upon pricing under which Modern continued to order products from SDC; and (2) the pricing used by SDC is inaccurate, is not in accordance with the SPA signed by Modern or the Original Terms, does not properly account for WAC and fails to properly calculate the amounts due and apply the proper amounts of credits and rebates to which Pharmaquick was entitled.

48.  Pharmaquick has been damaged by SDC's improperly seeking payment of amounts that are not owed and shutting down and discontinuing deliveries based on the wrongfully claimed amounts. These damages include damages resulting from the interference with Pharmaquick's ability to do business and increased costs of obtaining inventory.

49.  Pharmaquick will be irreparably harmed by SDC's continued pursuit of amounts it is not owed.

50.  Accordingly, based on the foregoing, there is a bona fide adverse interest between the parties and doubt concerning the following: (i) what pricing and terms apply; and (ii) the amount, if any, that is owed. The parties are entitled to have this doubt removed as there is a bona fide, actual, present, and practical need for the declarations sought herein. The declarations sought herein deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

51.  The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiffs, Pharmaquick and Rosenbaum, request the entry of a judgment: (a) declaring what pricing and terms apply and that any amounts owed have been paid by Pharmaquick and that no monies are owed to SDC; (b) enjoining SDC from taking further steps to collect on the amounts it claims to be owed, including but not limited to, any efforts to enforce its claimed security interests and guaranty; and (c) awarding such additional, or alternative, incidental

and or supplemental relief as may be necessary, including but not limited to compensatory, special and consequential damages, interest, costs, injunctive and such further relief as is proper.

**COUNT IV – Declaratory and Other Relief Pursuant to Florida Statutes Chapter 86
(Security Interests and Guarantee Not Valid)(Pharmaquick and Rosenbaum)**

52. Pharmaquick and Rosenbaum readopt and reallege paragraphs 1 through 27 above.

53. As detailed below, Pharmaquick and Rosenbaum seek a declaratory judgment as authorized by Florida Statutes Section 86.011 that the Pharmaquick Security Interests are not valid.

54. <u>SDC's position</u>: SDC claims that any money it is owed on the Pharmaquick Account is secured by and is guaranteed by the Pharmaquick Security Interests;

55. <u>Modern, Rosenbaum and RILFPA's position</u>: Pharmaquick and Rosenbaum dispute the validity of Pharmaquick Security Interests' and any other related UCC filings for the following reasons: (1) without an agreed upon and countersigned SPA, the security agreements (and associated UCC filings) and the guaranties are not effective and fail for a lack or failure of (i) consideration, and/or (ii) an agreement to secure or guarantee; (2) contrary to the security agreements and guaranties, Midtown Pharmacy does not do business as Pharmaquick, LLC; and (3) not all the owners of Midtown Pharmacy signed the Security Agreement.

56. Pharmaquick has been damaged by SDC's continued improper maintenance of the security interests. These damages include damages resulting from the interference with Pharmaquick's ability to do business and increased costs of obtaining inventory.

57. Pharmaquick will be irreparably harmed by SDC's continued improper maintenance of these security interest that are not valid.

58. Accordingly, based on the foregoing, there is a bona fide adverse interest between the parties and doubt concerning whether the security interests are valid and should be allowed to continue to be maintained. The parties are entitled to have this doubt removed as there is a bona

14

fide, actual, present, and practical need for the declarations sought herein. The declarations sought herein deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

59. The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiffs, Pharmaquick and Rosenbaum, request the entry of a judgment: (a) declaring that the Pharmaquick Security Interests are not effective, valid and enforceable and ordering the cancellation of any such interests; (b) enjoining SDC from taking steps to enforce its claimed security interests and guaranty; and (c) awarding such additional, or alternative, incidental and or supplemental relief as may be necessary, including but not limited to compensatory, special and consequential damages, interest, costs, injunctive and such further relief as is proper.

### COUNT V – Breach of Contract (Modern)

60. Modern readopts and re-alleges paragraphs 1 through 27 above.

61. SDC breached the SPA and/or the Original Terms by improperly shutting down Modern's account and failing to properly account for WAC and to apply and give Modern the agreed-upon Rebate and Discount it was entitled either pursuant to the SPA and/or the Original Terms.

62. SDC's breach has caused Modern damages, including but not limited to, losses resulting from Modern's inability to obtain and/or the increased costs associated with finding alternative sources of supply for its pharmaceuticals and all other damages by putting Modern in the position it would have occupied had no violation occurred.

63. All conditions precedent to maintain this claim have been performed or have been waived, or, because of its actions, SDC is barred by estoppel from asserting or relying upon any such conditions.

15

WHEREFORE, Modern requests the entry of a judgment against SDC for compensatory, consequential and incidental damages, including lost or reduced profits, as well as interest, attorney's fees and costs and such further relief as is proper.

## COUNT VI – Breach of Contract (Pharmaquick)

64. Pharmaquick readopts and re-alleges paragraphs 1 through 27 above.

65. SDC breached the SPA and/or the Original Terms by improperly shutting down Pharmaquick's account and failing to properly account for WAC and to apply and give Pharmaquick the agreed-upon Rebate and Discount it was entitled pursuant to the SPA and/or the Original Terms.

66. SDC's breach has caused Pharmaquick damages, including but not limited to, losses resulting from Pharmaquick's inability to obtain and/or the increased costs associated with finding alternative sources of supply for its pharmaceuticals and all other damages by putting Pharmaquick in the position it would have occupied had no violation occurred.

67. All conditions precedent to maintain this claim have been performed or have been waived, or, because of its actions, SDC is barred by estoppel from asserting or relying upon any such conditions.

WHEREFORE, Pharmaquick requests the entry of a judgment against SDC for compensatory, consequential and incidental damages, including lost or reduced profits, as well as interest, attorney's fees and costs and such further relief as is proper.

Dated this 28th day of January, 2019.

          SHAPIRO RAMOS, a professional association
          *Counsel for Plaintiffs*
          19 West Flagler Street, Suite #516
          Miami, Florida 33130
          Telephone: (305) 374-0052
          Facsimile: (305) 374-7320

          By: _____Jeffrey P. Shapiro_____
                Jeffrey P. Shapiro
                Fla. Bar No. 352284
                *jps@shapiroramos.com*
                *mr@shapiroramos.com*

## Verification

I, Michael Rosenbaum, pursuant to 28 U.S.C. Section 1746, declare as follows:

1. I am, and have been since 2002, an authorized representative of Modern Pharmacy, LLC, ("Modern") and Pharmaquick, LLC, ("Pharmaquick") the Plaintiffs in the present case and a citizen of the United States of America. I am eligible to vote in an election for the office of the President of the United States.

2. I make this verification based on my personal knowledge and based on my review of the documents attached as exhibits to the foregoing Verified Complaint for Damages and for Declaratory, Injunctive and Other Relief ("Verified Complaint")

3. In my capacity as an authorized representative of Modern and Pharmaquick, I have personal knowledge of the activities and intentions of Modern and Pharmaquick including those set out in the Verified Complaint and if called upon to testify I would competently testify as to the matters stated in the Verified Complaint. I also have knowledge of the actions of the Defendants and its representatives as detailed in the Verified Complaint.

4. I have personal knowledge of my activities, and intentions, including those set out in the Verified Complaint and if called on to testify I would competently testify as to the matters stated in the Verified Complaint.

5. I verify and I declare under penalty of perjury under the laws of the United States of America that the foregoing Verified Complaint and the factual statements in this Verified Complaint concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning Modern and Pharmaquick, their activities, and their intentions and concerning the activities of the Defendants and their representatives.

Executed on January 28, 2019.

_____
Michael Rosenbaum